UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CINDY SILVAGNI,

          Plaintiff(s),

vs.

WAL-MART STORES, INC.,

          Defendant(s).

Case No. 2:16-cv-00039-JCM-NJK

ORDER

(Docket Nos. 41, 43)

Pending before the Court are two motions to exclude damages pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. First, Defendant filed a motion to exclude Plaintiff's damages for loss of earning capacity. Docket No. 41. Plaintiff filed a response in opposition, and Defendant filed a reply. Docket Nos. 47, 50. Second, Defendant filed a motion to exclude Plaintiff's damages for hip surgery. Docket No. 43. Plaintiff filed a response in opposition, and Defendant filed a reply. Docket Nos. 49, 51. The Court finds the motions properly resolved without a hearing. Local Rule 78-1. For the reasons discussed more fully below, the motions are both hereby **DENIED**.

I.  **BRIEF FACTUAL OVERVIEW**

Plaintiff alleges that she slipped on a gel-like substance in the bath aisle of one of Defendant Wal-Mart's stores. *See, e.g.*, Docket No. 31 at 2. Plaintiff filed suit in state court, alleging a cause of action for negligence. *Id.* Defendant removed the case to this Court on the basis of diversity jurisdiction. *See* Docket No. 1.

On February 11, 2016, the parties filed a joint proposed discovery plan, which the Court approved the same day. Docket Nos. 8-9. That discovery plan and subsequent scheduling order reflected a stipulation between the parties to exchange initial disclosures by February 5, 2016. Docket No. 9 at 1. The Court also set an expert disclosure deadline of May 9, 2016, a rebuttal expert disclosure deadline of June 6, 2016, and a discovery cutoff of July 6, 2016. Docket No. 9 at 2-3.

On April 19, 2016, Plaintiff moved to extend these deadlines. Docket No. 10. The Court granted that motion in part and extended the expert disclosure deadline to June 23, 2016, the rebuttal expert disclosure deadline to July 22, 2016, and the discovery cutoff to August 22, 2016. Docket No. 18 at 3. At the same time, Plaintiff sought an order for leave to supplement the damages computation provided with her initial disclosures. Docket No. 10 at 3. Noting the early stage of the litigation, the Court declined to foreclose Plaintiff from pursuing the supplemental damages claims she had identified. Docket No. 18 at 2.

On September 8, 2016, Plaintiff filed a motion to reopen the discovery period. Docket No. 21.[1] The Court granted that motion and the discovery cutoff was reset to October 6, 2016. Docket Nos. 26, 28.

Plaintiff served her initial disclosures, with a damages computation, on February 22, 2016. Docket No. 34-1. Plaintiff supplemented her initial disclosures numerous times. *See, e.g.*, Docket No. 34-12 at 46 (Plaintiff's nineteenth supplemental initial disclosure). Plaintiff also served expert disclosures and supplements thereto. *See, e.g.*, Docket No. 34-17 at 10 (eighth supplement to designation of expert witnesses).

Defendant thereafter filed an omnibus motion to exclude damages evidence based on its contention that various disclosures of supplemental damages computations were untimely. Docket No. 32. After that motion was fully briefed, the Court addressed the significantly different presentation of

---

[1] Plaintiff again asked the Court to bless supplemental disclosures. Docket No. 21 at 4-5. At this point, the Court reminded the parties that court approval is unnecessary to supplement initial disclosures and that Plaintiff should supplement as she felt appropriate, subject to Defendant's ability to file a motion to exclude that supplement or seek other relief from the Court. Docket No. 22. The Court otherwise declined to weigh in on the issue at that time, since it was not properly before the Court. *Id.*

the law by the parties and outlined the standards that apply. *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237 (D. Nev. 2017). The omnibus motion was denied without prejudice, and the pending motions to exclude ensued.

**II.     STANDARDS**

A plaintiff is required to provide a damages computation with her initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). A plaintiff is also required to supplement her disclosures in a timely manner if she learns that the response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). The level of specificity required for a plaintiff's damages computation depends on the stage of the litigation and the claims at issue. "A party must make its initial disclosures based on the information then reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E). "A computation of damages may not need to be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff." *Silvagni*, 320 F.R.D. at 240. Instead, "the initial damages computation is generally viewed as merely a preliminary assessment that is subject to revision." *Id.* at 240-41 (citing *City & County of San Francisco v. Tutor-Saliba*, 218 F.R.D. 219, 222 (N.D. Cal. 2003)). "While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011). In short, a plaintiff must provide an initial disclosure based on the information then reasonably available to her, and must provide timely supplements thereto when additional information later becomes reasonably available. *Silvagni*, 320 F.R.D. at 241 & n.2. Judging the timeliness of disclosures is a case-by-case inquiry, and there are no "bright line" deadlines. *Id.* at 241.

When a plaintiff fails to comply with the requirements for disclosing a damages computation, sanctions may be imposed. Fed. R. Civ. P. 37(c). "The party requesting sanctions bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements established in Rule 26." *Silvagni*, 320 F.R.D. at 241-42 (citing *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011)). If a movant satisfies that burden, courts have "particularly wide latitude" in exercising their discretion to impose sanctions. *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In exercising that discretion, courts determine

initially whether the failure to comply with the disclosure requirements was either substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The party facing sanctions bears the burden of establishing substantial justification or harmlessness. *See, e.g.*, *Yeti by Molly*, 259 F.3d at 1107. Several factors guide the determination of substantial justification and harmlessness, including: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence. *See, e.g.*, *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999); *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). If either exception is established, the imposition of exclusion sanctions is not proper. *See* Fed. R. Civ. P. 37(c)(1).

"Exclusion sanctions are not a foregone conclusion if substantial justification or harmlessness have not been established, however." *Silvagni*, 320 F.R.D. at 242; *see also Jackson*, 278 F.R.D. at 594. The text of Rule 37(c) provides that, "[i]n addition to or instead of" exclusion sanctions, courts may impose other sanctions, such as payment of reasonable expenses (including attorneys' fees), informing the jury of the party's failure, and any other appropriate sanction. Fed. R. Civ. P. 37(c)(1)(A)-(C). Several factors guide the determination of whether to impose exclusion sanctions, including: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other parties; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See, e.g.*, *Jackson*, 278 F.R.D. at 594 (citing *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)).[2] Additionally, when an exclusion sanction is tantamount to dismissal of a claim, the court must also consider whether the non-compliance involved willfulness, fault, or bad faith. *R&R Sails, Inc. v. Insurance Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Although a finding of willfulness or bad faith is not otherwise required, willfulness or bad faith is a factor in deciding the appropriate level of sanctions to impose. *Jackson*, 278 F.R.D. at 594 (collecting cases).

---

[2] Some of these factors overlap with those addressed to substantial justification and harmlessness.

4

In practice, exclusion sanctions are generally limited to "extreme situations." *See, e.g.*, *Tutor-Saliba*, 218 F.R.D. at 220-21. Courts do not indulge gamesmanship and will not hesitate to impose exclusion sanctions when there has been misconduct, but courts are otherwise leery of imposing the harsh sanction of exclusion absent a significant possibility of prejudice due to the untimeliness of the disclosure. *Silvagni*, 320 F.R.D. at 243 & n.6. Hence, "[c]ourts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed." *Jackson*, 278 F.R.D. at 594. "Lesser sanctions and other measures are generally more appropriate than evidence preclusion when the disclosure is provided during the discovery period and the delay can be remedied during the existing discovery period or with a limited and brief extension of discovery." *Silvagni*, 320 F.R.D. at 243 (quoting *Jones v. Wal-Mart Stores, Inc.*, Case No. 2:15-cv-1454-LDG-GWF, 2016 WL 1248707, at *7 (D. Nev. Mar. 28, 2016)). Moreover, courts are unlikely to exclude damages when any harm could have been minimized through the movant's cooperation with opposing counsel or through promptly seeking judicial relief. *Id.* at 243 & n. 7 (citing, *inter alia*, *Roe v. Nevada*, 621 F. Supp. 2d 1039, 1060 (D. Nev. 2007) and *Jones*, 2016 WL 1248707, at *7).

### III. ANALYSIS

Currently pending before the Court are two motions filed by Defendant to exclude damages disclosures. First, Defendant moves to exclude Plaintiff's damages for loss of earning capacity. Docket No. 41. Second, Defendant moves to exclude Plaintiff's damages for hip surgery. Docket No. 43. The Court will address each motion below in turn.

#### A. Loss of Earning Capacity

Defendant's first motion seeks to exclude Plaintiff's disclosure of damages for loss of earning capacity, as well as the expert opinion of Chris Reyes regarding those damages. *See* Docket No. 41. Plaintiff identified an intent to seek damages for loss of earning capacity in a disclosure made on April 15, 2016, at which time she further noted that she would be providing an expert report with a specific damages computation. Docket No. 41-5. Plaintiff provided a detailed computation for these damages on June 23, 2016, through Mr. Reyes' expert report that was based on, *inter alia*, newly procured medical expert reports, Docket No. 41-6. Plaintiff contends that such disclosures were properly timed based on when information was reasonably available to her, *see, e.g.*, Docket No. 47 at 7 n.4, while

1  Defendant contends that the computation was improperly made at the deadline for expert disclosures
2  rather than by the deadline for initial disclosures, *see, e.g.*, Docket No. 41 at 9.

3  As an initial matter, neither party provides sufficient information as to the timeliness of this
4  disclosure. That inquiry turns on whether the timing of the disclosure was reasonable based on when
5  the information was reasonably available to the disclosing party. *See, e.g.*, *Silvagni*, 320 F.R.D. at 241.
6  For its part, Defendant has essentially repackaged its already-rejected argument that a damages
7  disclosure made at or near the deadline for expert disclosures is untimely and must be excluded. *See,*
8  *e.g.*, Docket No. 41 at 9.[3] Defendant again sweeps too broadly, as there is nothing inherently improper
9  about supplementing a disclosure on loss of earning capacity damages in conjunction with disclosing
10 an expert report at the expert disclosure deadline that is based, in part, on medical expert opinions
11 rendered. *See, e.g.*, *Stedeford*, 2015 WL 4602301, at *3-5 (denying motion to exclude loss of earning
12 capacity damages computation made through expert opinion at expert disclosure deadline).[4] Conclusory
13 assertions that Plaintiff must have been able to disclose sooner are not sufficient to carry the day.

14 For her part, Plaintiff sticks her head in the sand by arguing that it is Defendant that bears the
15 burden of showing that a disclosure was untimely. *See, e.g.*, Docket No. 47 at 2. Plaintiff
16 misapprehends the impact of the assignment of burdens. Plaintiff is correct that the party seeking
17 exclusion sanctions bears the burden of persuasion in showing that a disclosure was untimely. *See, e.g.*,

---

[3] The Court reiterates that it is aware of decisions espousing a stricter approach than has been adopted by the undersigned, but the Court declines to follow suit for the reasons already identified. *Silvagni*, 320 F.R.D. at 239-43; *accord Jones*, 2016 WL 1248707, at *5, 7 (Foley, J.) (acknowledging "that judges in other cases cited by Defendant have been more strict in applying the evidence preclusion sanction," but declining to adopt that approach); *Stedeford v. Wal-Mart Stores, Inc.*, Case No. 2:14-cv-01429-JAD-PAL, 2015 WL 4602301, at *3-5 (D. Nev. July 30, 2015) (Leen, J.) (holding that damages computation made on expert disclosure deadline was not untimely); *see also Wilson v. Wal-Mart Stores, Inc.*, Case No. 2:15-cv-01791-RCJ-VCF, 2016 WL 4699693, at *1, 3 (D. Nev. Sept. 7, 2016) (Jones, J.) (concluding that supplemental disclosures made two months before discovery cutoff were timely and, even if they were not timely, exclusion sanctions were not warranted).

[4] Although it acknowledges that Plaintiff's expert (Mr. Reyes) stated that he reviewed the medical expert reports, Defendant questions whether doing so was truly necessary to rendering his opinion. *See* Docket No. 41 at 9. The Court is not persuaded that Mr. Reyes was required to opine on loss of earning capacity damages without reviewing the medical expert reports.

*Silvagni*, 320 F.R.D. at 241-42. As is not uncommon in the discovery context, however, the Court's analysis of a dispute may require consideration of facts uniquely within each party's possession. *See, e.g.*, Fed. R. Civ. P. 26, Advisory Committee Notes (2015) (discussing the parties' disparate access to information pertinent to a proportionality analysis). Even though the ultimate burden may be on the party seeking exclusion, the party opposing exclusion is not necessarily absolved from making her own showing of the pertinent facts based on the information within her control to enable to the Court to analyze the dispute based on all available information. *Cf. Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468-69 (N.D. Tex. 2015). Conclusory statements that disclosures were proper and that the party seeking exclusion did not carry its burden are not helpful in this endeavor.[5]

While the parties' showings are insufficient on this issue, the Court need not determine definitively whether the disclosure was timely in this case because Defendant's sole relief sought of exclusion is not warranted regardless. The record is clear that (1) Plaintiff identified an intent to seek damages for loss of earning capacity subject to expert analysis on April 15, 2016, Docket No. 41-5; (2) Plaintiff disclosed the expert report of Mr. Reyes that Plaintiff has a loss of earning capacity of between $103,832 and $283,130, on the expert disclosure deadline of June 23, 2016, Docket No. 41-6; and (3) discovery ultimately remained open for another 105 days until October 6, 2016, Docket No. 28. As the Court has already made clear, absent unusual circumstances such as bad faith, exclusion sanctions are generally not warranted when damages are disclosed before the discovery cutoff and the defendant has an opportunity to remedy any harm it suffered by timely cooperating with opposing counsel or seeking prompt relief from the Court. *See Silvagni*, 320 F.R.D. at 243 (collecting cases); *accord* Docket No. 18 at 2 (order issued on April 27, 2016, cautioning that the Court "discourage[d] parties from filing sanctions motions rather than working cooperatively in the discovery process" when disputes arise regarding initial disclosures or supplements thereto (citing *Jones*, 2016 WL 1248707, at *7-8)). The

---

[5] On February 22, 2016, Plaintiff served an initial disclosure that did not include a claim for loss of earning capacity and, on March 23, 2016, Plaintiff served an interrogatory response disclaiming an intent to seek such damages. Docket Nos. 41-2, 41-7. Plaintiff fails to address why she did so, only to reverse course shortly thereafter by notifying Defendant that she was in fact pursuing such a claim on April 15, 2016. Docket No. 41-5.

circumstances of this case do not warranting excluding a damages computation disclosed 105 days before the discovery cutoff.[6] Even were the Court to assume that Plaintiff's disclosure was untimely, this is not the type of "extreme situation[]" in which exclusion sanctions should be imposed.[7]

In short, the sole remedy sought by Defendant is exclusion and, even assuming the disputed disclosure was untimely, exclusion is not warranted. The Court will deny this motion.

B. Hip Surgery

Defendant next seeks an order excluding Plaintiff's damages for hip surgery as disclosed on June 14, 2016. Docket No. 43. Defendant asserts that the disclosure was untimely because it was not made by the initial disclosure deadline of February 5, 2016, and was instead made relatively close to the deadline for expert reports. *Id.* at 12. Defendant also highlights that Plaintiff learned of the potential need for hip surgery on April 1, 2016, and disclosed that a few days later, but waited more than two months before providing a damages computation. *Id.* at 9. The circumstances surrounding this disclosure are not such that exclusion sanctions are warranted. The medical record shows that Plaintiff treated for her hip pain as early as May 21, 2015. Docket No. 43-9. The medical record further shows Plaintiff's doctor noted the possibility of hip surgery on April 1, 2016. *Id.* Just three days later, on April 4, 2016, Plaintiff disclosed the possible hip surgery. Docket No. 43-4. On June 14, 2016, Plaintiff disclosed a damages computation by Dr. Nick Liu in the amount of $42,023.10. Docket No. 43-7. That

---

[6] Defendant asserts bad faith, *see* Docket No. 41 at 16, but the Court does not find that Plaintiff was engaged in any bad faith conduct with respect to the disclosure in dispute.

[7] Defendant argues that it was prejudiced by its inability to retain its own affirmative expert on loss of earning capacity. *See* Docket No. 41 at 11. Although the situation crystalized upon the disclosure of Mr. Reyes' report on June 23, 2016, Defendant proffers no reason why it chose to wait for discovery to close and then for another two months thereafter before it filed a motion to exclude on December 14, 2016. *See* Docket No. 32. This six-month delay stultifies the Court's ability to easily rectify any potential harm by allowing Defendant to obtain its own expert during the discovery period, and further militates against exclusion. *See, e.g.*, *Silvagni*, 320 F.R.D. at 243 n. 7 (citing, *inter alia*, *Roe v. Nevada*, 621 F. Supp. 2d 1039, 1060 (D. Nev. 2007)). The Court notes again that Defendant has not sought an order allowing it to obtain its own expert now, but seeks only exclusion in the pending motion.

disclosure came nine days before the expert disclosure deadline and 114 days before discovery closed.[8] Even assuming that the disclosure was untimely, the harsh sanction of exclusion is simply not warranted. There was ample time for Defendant to address any problems arising out of the timing of that disclosure before the discovery cutoff and, indeed, before the deadline for initial expert reports.

As Defendant seeks no relief other than exclusion, the Court will deny this motion.[9]

## IV. CONCLUSION

For the reasons discussed above, the motions to exclude damages (Docket Nos. 41 and 43) are hereby **DENIED**.

IT IS SO ORDERED.

DATED: October 30, 2017

                                            _____
                                            NANCY J. KOPPE
                                            United States Magistrate Judge

---

[8] Defendant makes a half-hearted attempt at showing willfulness or bad faith. Docket No. 43 at 14. The Court is not persuaded. The Court notes that two intervening supplements (between the initial notice of possible surgery and the damages computation) failed to repeat that hip surgery was possible. *See* Docket Nos. 43-5, 43-6. Especially given that the damages computation was provided in a relatively prompt manner and was provided prior to the expert disclosure deadline, however, the Court does not find that those omissions show bad faith.

[9] Defendant contends that it was prejudiced because it was unable to obtain its own expert on this issue by the subject deadline. *See* Docket No. 43 at 12. Defendant fails to explain why the Court should impose the drastic remedy of exclusion when it could have resolved any such harm by seeking a stipulation to extend that deadline for this purpose or seeking other relief from the Court in a prompt manner <u>even before the expert deadline expired</u>. The Court notes again that Defendant has not sought an order allowing it to obtain its own expert now, but seeks only exclusion in the pending motion.